UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GUILLERMINA GREEN, as mother and next
friend of J.G., a minor,

    Plaintiff,

      v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 05-550 (CKK)

**MEMORANDUM OPINION**
(May 2, 2006)

      Plaintiff Guillermina Green, on behalf of her minor son, J.G., brought this action under the

Individuals with Disabilities Education Act ("IDEA" or "the Act"), 20 U.S.C. § 1400 *et. seq.*, and

D.C. Code § 38-2501, against Defendant the District of Columbia on March 18, 2005.  The IDEA

provides that all children with disabilities will be provided a free and appropriate public education

("FAPE"), and provides for procedural safeguards to ensure that disabled children receive

individualized education programs ("IEP") to fulfill the Act's goals.  Plaintiff contends that the

Hearing Officer's February 17, 2005 decision with respect to her son, J.G., (1) failed to rule on all

issues raised by Plaintiff, and (2) contained certain findings that were in error.  *See, e.g.*, Pl.'s Opp'n

& Reply at 1, 2.  In contrast, Defendant argues that Plaintiff's claims are moot, given that the

Hearing Officer's Decision ("H.O.D"), in combination with decisions made in J.G.'s subsequent

MDT/IEP meeting, actually provided Plaintiff with the relief sought.  Upon a searching examination

of Plaintiff's Motion for Summary Judgment, Defendant's Opposition and Cross-Motion for

Summary Judgment, Plaintiff's Opposition and Reply, Defendant's Reply, the relevant case law, the

attached exhibits, and the entire record herein, the Court shall deny Plaintiff's Motion for Summary

Judgment and shall grant Defendant's Cross-Motion for Summary Judgment.

## I: BACKGROUND

Plaintiff's son, J.G., is a minor child (currently 17 years old) with disabilities who has

resided within the District of Columbia during all applicable times.  *See* Pl.'s Stmt. of Mat. Facts

Not in Dispute ("Pl.'s Stmt.") ¶ 1.[1]  In July 2000, J.G. was diagnosed with "Attention Deficit

Hyperactivity Disorder" ("ADHD").  *Id.* ¶ 2.  In April 2002, when J.G. was 13 years old, he was

struck by a truck while walking.  *Id.* ¶ 3.  As a result of this accident, he sustained multiple injuries,

including a traumatic brain injury.  *Id.*  At that time, J.G. was enrolled in Holy Name School, a

small parochial school located within the District of Columbia.  *Id.*

As J.G.'s learning difficulties from his traumatic brain injury and his ADHD became more

pronounced, Plaintiff requested that the District of Columbia Public Schools System ("DCPS")

evaluate J.G. to determine if he required special education services.  *Id.* ¶ 4.  However, DCPS did

not respond.  *Id.*  On February 21, 2003, an administrative due process hearing was convened at the

request of Plaintiff.  *Id.* ¶ 5.  Pursuant to the resulting H.O.D. issued on March 4, 2003, DCPS was

ordered to conduct numerous evaluations, determine an appropriate placement, and discuss an

---

[1] In determining the undisputed facts that exist in a case for the purposes of reviewing a motion for summary judgment this Court strictly adheres to the text of Local Civil Rule 56.1.  As such, in resolving the present summary judgment motion, this Court "assumes that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  LCvR 56.1.  Therefore, in most instances, the Court cites to either Plaintiff's or Defendant's Statement of Material Facts As To Which There is No Genuine Issue ("Pl.'s/Def.'s Stmt.") unless such statement is contradicted by the other party's statement.  The Court also cites directly to the record, where appropriate, to provide additional information not covered in either of the parties' statements.  The Court notes that in this instance, the parties essentially agree on all relevant facts.  *See, e.g.*, Def.'s Opp'n & Cross-Mot. for Summ. J. at 4 ("defendant does not dispute plaintiff's 'material facts' number 1 through 22 as they are irrelevant to the matter at hand . . . . [a]dditionally, defendant does not dispute the remainder of plaintiff's material facts").  Having set forth these preliminaries, the Court moves to a discussion of the material facts not genuinely in dispute.

award of compensatory education at an MDT/IEP[2] meeting.  *Id.* ¶ 6.  If DCPS failed to conduct

these evaluations within the relevant time frame, DCPS was required to fund independent

evaluations.  *Id.*  On July 8, 2003, DCPS conducted a medical review of J.G.'s records, during

which Dr. Crystal Taylor-Davis found, *inter alia*, that (1) J.G.'s "past medical history is remarkable

for a diagnosis of Attention Deficit Hyperactivity Disorder," (2) J.G. "was struck by a truck in

August 2002 sustaining a head injury and a broken leg," and (3) J.G. "is entitled to a disability

classification of Traumatic Brain Injury."  *See* Compl., Ex. 1 (2/17/05 H.O.D.) at 4, ¶ 2.  DCPS

ultimately failed to conduct the evaluations within the given time, as ordered in the March 4, 2003

H.O.D.; as such, Plaintiff had J.G. independently evaluated, forwarding these evaluations to DCPS

on or before September 8, 2003.  Pl.'s Stmt. ¶¶ 7-8.

After receiving these reports and conducting this review, DCPS failed to timely convene an

MDT/IEP meeting as outlined in the March 4, 2003 H.O.D.  *Id.* ¶ 9.  In September 2003, because

J.G. had aged out of the program at Holy Name School and DCPS had not yet convened an

MDT/IEP to determine his eligibility for special education services, Plaintiff enrolled J.G. at Bishop

Carroll High School ("Carroll") – a Catholic high school within the District of Columbia – for the

2003-2004 school year.  *Id.* ¶ 10.  Carroll does not offer special education services.  *See* Compl.,

Ex. 1 (2/17/05 H.O.D.) at 4, ¶ 3.

DCPS finally convened an MDT/IEP meeting on November 19, 2003.  *Id.* ¶ 4; *see also*

Pl.'s Stmt. ¶ 12.  The DCPS personnel present at the meeting decided to develop an "interim" IEP so

that J.G. could begin receiving some special education services as a learning disabled student.  Pl.'s

Stmt. ¶ 14.  Specifically, "[t]he MDT classified [J.G.] with a Specific Learning Disability in

---

[2] "MDT" stands for "Multidisciplinary Team."  Compl., Ex. 1 (2/17/05 H.O.D.) at 3.

mathematics and prescribed five hours per week of specialized instruction." Compl., Ex. 1 (2/17/05 H.O.D.) at 4, ¶ 4; *see also* Pl.'s Stmt. ¶ 16. "The MDT agreed to place [J.G.] at Carroll despite the lack of special education services there, because [J.G.'s mother, Plaintiff,] stated her intention that [J.G.] remain at Carroll." *Id.*; *see also* Pl.'s Stmt. ¶ 18 ("At the November 19, 2003 meeting, Plaintiff requested that the services contained on the interim IEP be delivered at Carroll High School until a permanent IEP was developed and a permanent placement identified because that was the school J.G. currently attended."). According to Plaintiff, there were multiple problems with the November 19, 2003 meeting, including, *inter alia*: (1) DCPS personnel necessary to review J.G.'s evaluations, determine his eligibility for special education services, and develop his ultimate IEP and placement were not available to attend the meeting, Pl.'s Stmt. ¶ 12; (2) a review of J.G.'s medical information concerning his traumatic brain injury was not available at the November 19, 2003 IEP meeting, *id.* ¶ 13; and (3) certain issues concerning J.G.'s eligibility for the disability classifications of "Other Health Impaired" (ADHD) and "Traumatic Brain Injury" were deferred until the team could be reconvened, *id.* ¶ 15.

Following the November 19, 2003 meeting, DCPS – despite numerous requests by Plaintiff – never reconvened an MDT/IEP meeting, never developed a permanent IEP for J.G., and never provided J.G. with the services contained in the initial IEP during the 2003-2004 school year. *Id.* ¶¶ 20-21. Plaintiff enrolled J.G. at Coolidge High School, a public school within the District of Columbia, as a non-attending student on September 10, 2004 because she hoped that J.G. would again attend Carroll, his previous, parochial school. *Id.* ¶ 22; *see also* Compl., Ex. 1 (2/17/05 H.O.D.) at 4, ¶ 5. However, Carroll declined to readmit J.G. for the 2004-2005 school year because of his poor academic performance during the previous year. *Id.* As such, Plaintiff enrolled J.G. as

an attending student at Coolidge on September 22, 2004.  *Id*.  Coolidge developed a class schedule

for J.G. on September 22, 2004.  *Id*.  During the Fall Semester of the 2004-2005 school year, DCPS

provided J.G. specialized instruction in math on an as-needed basis, usually two hours per week.

Compl., Ex. 1 (2/17/05 H.O.D.) at 4, ¶ 6.

Despite his enrollment in Coolidge, DCPS still delayed in convening an IEP meeting for J.G.

Pl.'s Stmt. ¶ 23.  During this delay, J.G. was accepted by High Road Academy ("HRA"), a private

school offering full-time special education services in a therapeutic environment, on November 9,

2004.  Compl., Ex. 1 (2/17/05 H.O.D.) at 5, ¶ 8.  Following this acceptance, Plaintiff – on January

12, 2005 – filed a request for an administrative due process hearing pursuant to the IDEA for J.G.,

which was held on February 9, 2005 before Hearing Officer Terry Michael Banks.  *Id*. ¶¶ 23-24;

Compl., Ex. 1 (2/17/05 H.O.D.) at 3.  Plaintiff's Request for Hearing placed five issues before the

Hearing Officer, as she alleged that DCPS had:  (1) failed to conduct a medical review of J.G.'s

evaluations; (2) failed to convene an MDT meeting to develop an IEP; (3) failed to determine J.G.'s

need for compensatory education services; (4) failed to identity J.G. as a disabled student; and (5)

failed to provide an appropriate placement.  Compl., Ex. 1 (2/17/05 H.O.D.) at 3; Pl.'s Stmt. ¶ 25.

By way of relief at the February 9, 2005 hearing, Plaintiff requested that Hearing Officer Banks

order DCPS: (1) to place and fund J.G. at HRA; (2) to convene an MDT/IEP meeting to develop an

appropriate IEP for J.G. within 30 days of his enrollment at HRA; and (3) discuss and determine the

type, amount of, and method for the delivery of compensatory education services in a compensatory

education plan.  Pl.'s Stmt. ¶ 26.

Pursuant to his H.O.D. issued February 17, 2005, Hearing Officer Banks found that DCPS

denied J.G. a FAPE by failing to develop an IEP and to make a placement for the 2004-2005 school

year.  *Id*. ¶ 27; *see also* Compl., Ex. 1 (2/17/05 H.O.D.) at 5.  Hearing Officer Banks stressed that

DCPS failed to meet its burden of proving that it provided appropriate special education services to J.G., failed to provide an appropriate placement for him, and failed to offer any evidence that J.G.'s placement at Coolidge provided any educational benefit to him. *Id.* However, Hearing Officer Banks also found that (1) DCPS did not deny J.G. a FAPE by failing to conduct a medical review, as alleged by Plaintiff, as it had completed a medical review on July 8, 2003 in which two possible disability classifications were indicated; and (2) DCPS met its burden of proving that it identified J.G. as a disabled student at the MDT meeting held on November 19, 2003. Pl.'s Stmt. ¶ 28; Compl., Ex. 1 (2/17/05 H.O.D.) at 5.

In weighing the proper placement for J.G., Hearing Officer Banks noted certain problems with HRA – Plaintiff's school of choice for J.G. Pl.'s Stmt. ¶ 28; Compl., Ex. 1 (2/17/05 H.O.D.) at 5-6. Hearing Officer Banks pointed out that HRA was not necessarily an appropriate placement for J.G. because the teacher to whom J.G. would be assigned did not have special education certification from the District of Columbia. *Id.* Moreover, Hearing Officer Banks noted that J.G.'s latest IEP required that he receive only five hours per week of specialized instruction; given that HRA provided full-time specialized instruction, Hearing Officer Banks was unsure whether HRA represented "the least restrictive appropriate environment" for J.G. *Id.* Despite these drawbacks, Hearing Officer Banks ordered that DCPS place and fund J.G. at HRA via "an interim placement" through the completion of the 2004-2005 school year because J.G. would be able to receive – at the very least – the five hours per week of special education instruction contained on his November 2003 IEP, and because HRA's director was confident that J.G.'s proposed teacher "is eligible for and will soon receive provisional certification." *Id.*

Following the February 17, 2005 H.O.D., Plaintiff filed a Complaint in this Court in which she sought that J.G. be placed at HRA on a permanent basis and that he be awarded compensatory

education for the period of time that DCPS failed to provide a FAPE.  *See* Compl. at 9.  Plaintiff

also stressed that Hearing Officer Banks' decision, in which J.G. was "the prevailing party," was

incomplete in several respects; for instance, Plaintiff alleged that Hearing Officer Banks failed to

address several issues raised by her, including allegations that:  (1) the November 19, 2003 IEP was

an "interim" IEP, and DCPS never developed a permanent IEP; (2) the MDT/IEP team that met on

November 19, 2003 was improperly constituted, as several key members failed to attend; (3) DCPS

failed to determine appropriate disability classifications for J.G.; and (4) the November 19, 2003

IEP was not appropriate to meet J.G.'s special education needs.  Pl.'s Stmt. ¶ 30.

     As directed by the H.O.D., an MDT/IEP meeting was convened by DCPS for J.G. on May

17, 2005.  *Id.* ¶ 32.  At this meeting, J.G.'s needs, goals, and strengths were discussed; J.G.'s team

ultimately determined that he was in need of a full-time special education program and an IEP

reflecting this determination was developed.  *Id.*  Moreover, at this meeting, DCPS offered

compensatory education in the form of 1:1 tutoring and counseling for J.G.  Def.'s Stmt. ¶ 6.

Plaintiff and her counsel agreed to the amount and type of compensatory education offered.  *Id.*  It is

somewhat unclear whether DCPS plans to keep J.G. at HRA, as a final decision regarding his

placement was not made on May 17, 2005 because additional testing, including "a social work

assessment to determine if [J.G.] is able to participate in activities with non-disabled peers," was still

needed.  *See* Def.'s Opp'n & Cross-Mot., Ex. 1 (May 17, 2005 IEP Notes) at 5.  However, J.G. was

enrolled at HRA for the completion of the 2004-2005 school year, and currently remains enrolled at

HRA.  Def.'s Stmt. ¶ 7.

## II: STATUTORY FRAMEWORK

     The purpose of the IDEA is "to ensure that all children with disabilities have available to

them a free appropriate public education ["FAPE"] that emphasizes special education and related

services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A).  "Implicit" in the

IDEA's guarantee "is the requirement that the education to which access is provided be sufficient to

confer some educational benefit upon the handicapped child."  *Bd. of Educ. of Hendrick Hudson*

*Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 200, 102 S.Ct. 3034, 73 L.Ed.2d

690 (1982) ("*Rowley*").

As a condition of funding under the IDEA, the Act requires school districts to adopt

procedures to ensure appropriate educational placement of disabled students.  *See* 20 U.S.C. § 1413.

School districts must also develop comprehensive plans for meeting the special educational needs of

disabled students.  *See* 20 U.S.C. § 1414(d)(2)(A).  These plans, known as individualized

education plans, or IEPs, must

> include a written statement of evaluation and plan of action that sets forth the child's
> present level of educational performance, measurable goals, including benchmarks
> or short-term objectives, special education and related services to be provided to the
> child and program modifications or supports for school personnel that will be
> provided to the child, the child's ability to interact with non-disabled children, a
> statement of administrative modification, the projected date for the beginning of
> services, and the anticipated frequency, location and duration of those services, and
> how the child's progress toward the annual goals will be measured.

*Diatta v. Dist. of Columbia*, 319 F. Supp. 2d 57, 66 (D.D.C. 2004) (citing 20 U.S.C. §

1414(d)(1)(A)(i)-(vi), (viii)).

A student's eligibility for a FAPE under the IDEA is determined by the results of testing and

evaluating the student, and the findings of a "multidisciplinary team" and/or "individualized

educational plan team" ("MDT/IEP team").  Such a team consists of the disabled student's parents,

teachers, and other educational specialists, who meet and confer in a collaborative process to

determine how best to accommodate the needs of the students to provide a FAPE.  *See* 20 U.S.C. §

1414(d)(1)(B) (outlining the membership of the IEP team).  The federal regulations interpreting the

IDEA require that a meeting to develop an IEP be held within thirty (30) days of the determination of a child's need for special education and related services. 34 C.F.R. § 300.343(b)(2).[3]  The District of Columbia's regulations follow suit.  D.C. Mun. Regs. tit. 5 § 3007.1.

The IDEA also guarantees parents of disabled children the opportunity to participate in the evaluation and placement process.  *See* 20 U.S.C. § 1414(f) (allowing for alternative means of participating in meetings, such as tele- or video-conferencing), 1415(b)(1) (ensuring that the parents have the opportunity to participate fully in the process by providing access to records relating to the child and allowing for  independent evaluations of the child).  "The IEP team shall conduct an initial evaluation of a child within a reasonable time of receiving a written referral and parental consent to proceed within timeliness consistent with Federal law and D.C. Code § 38-2501(a)."  D.C. Mun. Regs. tit. 5, § 3005.2.  The regulations require DCPS to use "a variety of assessment tools and strategies" to gather "relevant functional and developmental information about the child."  *Id*. § 3005.9(b).  Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an impartial due process hearing, *see* 20 U.S.C. §§ 1415(b)(6)(A) (permitting the filing of a complaint by objecting parents), (f)(1)(A) (providing parents who file a complaint under § 1415(b)(6) with the opportunity to have an impartial due process hearing), at which they have a "right to be accompanied and advised by counsel."  20 U.S.C. § 1415(h)(1).  A qualified impartial Hearing Officer conducts the due process hearing in accordance with the Act.  D.C. Mun. Regs. tit. 5, § 3030.1.  Under the IDEA, a party who is a parent of the disabled child is entitled to attorney's

---

[3] On November 13, 2003, the District of Columbia amended the statute that required DCPS to assess and evaluate a student who may have a disability and who may require special education services, changing the amount of time allotted for completion of the evaluation from sixty (60) days to one hundred and twenty (120) days.  *See* D.C. Code § 38-2501.  The amended statute allots one hundred and twenty (120) days within learning of a child's disability to locate an appropriate placement.  *Id*. §§ 38-2501(a) & (b).

fees and costs if he or she is a "prevailing party."  20 U.S.C. § 1415(i)(3)(B).  To be the prevailing

party, the parent(s) must gain a "material alteration of the legal relationship of the parties" and gain

judgment on the merits.  *Bridgeforth v. Dist. of Columbia*, 933 F. Supp. 7, 10 (D.D.C. 1996).

Parents "aggrieved by" a Hearing Officer's findings and decision may bring a civil action in

either state or federal court.  20 U.S.C. § 1415(i)(2); D.C. Mun. Regs. tit. 5, § 3031.5.  The district

court has remedial authority under the Act, and broad discretion to grant "such relief as the court

determines is appropriate" under the IDEA as guided by the goals of the Act.  20 U.S.C. §

1415(i)(2)(B)(iii).

### III: LEGAL STANDARDS

*A.     Summary Judgment Standard*

A party is entitled to summary judgment if the pleadings, depositions, and affidavits

demonstrate that there is no genuine issue of material fact in dispute and that the moving party is

entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638

(D.C. Cir. 1994).  Under the summary judgment standard, Defendant, as the moving party, bears the

"initial responsibility of informing the district court of the basis for [its] motion, and identifying

those portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of

material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986).  Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [his]

own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific

facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the

nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary

10

judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d

202 (1986). To be material, the factual assertion must be capable of affecting the substantive

outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible

evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S.

Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251, 106 S.Ct. 2505

(the court must determine "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If

the evidence is merely colorable, or is not sufficiently probative, summary judgment may be

granted." *Liberty Lobby*, 477 U.S. at 249-50, 106 S.Ct. 2505 (internal citations omitted). "Mere

allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper

motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The

adverse party must do more than simply "show that there is some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986). Instead, while the movant bears the initial responsibility of

identifying those portions of the record that demonstrate the absence of a genuine issue of material

fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is

a *genuine issue for trial*.'" *Id.* at 587, 106 S.Ct. 1348 (citing Fed. R. Civ. P. 56(e)) (emphasis in

original).

      B.     *Review of an Administrative Decision Under the IDEA*

      The IDEA permits "any party aggrieved by the findings and decision" rendered during

administrative proceedings to "bring a civil action" in state or federal court without regard to the

amount in controversy. 20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.512(b)(3). The reviewing court

"shall receive the records of the administrative proceedings, shall hear additional evidence at the

request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); 34 C.F.R. § 300.512(b)(3). In a review of an H.O.D., the burden of proof is always on the party challenging the administrative determination, who must "at least take on the burden of persuading the court that the Hearing Officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so." *Reid v. Dist. of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988) ("*Kerkum I*")). Little deference, however, is due those hearing decisions which lack "reasoned and specific findings." *Id.* (quoting *Kerkum v. Superintendent, D.C. Pub. Schs.*, 931 F.2d 84, 87 (D.C. Cir. 1991) "*Kerkum II*")).

The Supreme Court has interpreted the "preponderance standard of review not to be an allowance of unfettered *de novo* review." *Dist. of Columbia v. Ramirez*, 377 F. Supp. 2d 63, 67 (D.D.C. 2005) (quoting *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034). Courts must give administrative proceedings "due weight," and "[f]actual findings from the administrative proceedings are to be considered prima facie correct." *Id.* (quoting *S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003)). Courts may not substitute their own views for those of the Hearing Officer, *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034; *Shaw v. Dist. of Columbia*, 238 F. Supp. 2d 127, 134 (D.D.C. 2002), and a court upsetting a Hearing Officer's decision "must at least explain its basis for doing so." *Ramirez*, 377 F. Supp. 2d at 67 (quoting *Kerkam I*, 862 F.2d at 887). However, the statute also suggests "less deference than is conventional in administrative proceedings," *Reid*, 401 F.3d at 521, since the district court is allowed to hear additional evidence at the request of the party. 20 U.S.C. § 1415(i)(2)(C)(ii). "When no additional evidence is introduced in a civil suit seeking review of an H.O.D., a motion for summary judgment

operates as a motion for judgment based on the evidence comprising the record." *Ramirez*, 377 F.

Supp. 2d at 67 (citing 20 U.S.C. § 1415(i)(2)(B)).

## IV: DISCUSSION

Plaintiff, in her Complaint and Motion for Summary Judgment, alleges that Hearing Officer

Banks' February 17, 2005 H.O.D. contains seven deficiencies that require relief.  According to

Plaintiff, Hearing Officer Banks erred (1) by finding that DCPS met its burden of proving that it

identified J.G. as a disabled student at the November 19, 2003 MDT/IEP meeting, *see* Pl.'s Mot. for

Summ. J. at 6; (2) by pointing out that HRA might not be an appropriate placement for J.G., *id.* at

7; (3) "by failing to find that [DCPS] denied J.G. [a] FAPE by failing to timely convene the

November 19, 2003 MDT/IEP/Placement meeting," *id.* at 8; (4) by failing to find that DCPS denied

J.G. a FAPE by failing to have appropriate personnel at the November 19, 2003" MDT/IEP

meeting, *id.* at 9; (5) by placing J.G. at HRA on an "interim" basis rather than affording him a

permanent placement there, *id.* at 10; (6) by "failing to find that at the November 19, 2003 IEP

meeting, [DCPS] agreed to place J.G. at Carroll High School and provide the services contained on

his interim IEP at Carroll," *id.* at 11; and (7) by failing to order DCPS to provide compensatory

education services for its post-2003 delay, *id.*  Plaintiff requests that this Court issue judgment in her

favor on all counts, find that Hearing Officer Banks erred as described above, award Plaintiff

compensatory education services, order that J.G. be placed at HRA on a permanent – rather than

interim – basis, and award attorney's fees and costs to Plaintiff.  *Id.* at 13.  Despite these allegations,

it is clear that a grant of summary judgment in favor of Defendant is warranted for three central

reasons.

A.      *Plaintiff's Claims of Error by Hearing Officer Banks Are Irrelevant, Given that J.G. Has Been Awarded the Relief Sought as the Prevailing Party*

Of the seven "errors" Plaintiff identifies contained within and flowing from Hearing Officer Banks' February 17, 2005 H.O.D., five (i.e., the first four listed, and the sixth listed) may be categorized as "factual mistakes."  These five "factual mistakes" alleged by Plaintiff are her claims that Hearing Officer Banks' erred (1) by finding that DCPS met its burden of proving that it identified J.G. as a disabled student at the November 19, 2003 MDT/IEP meeting, *see* Pl.'s Mot. for Summ. J. at 6; (2) by pointing out that HRA might not be an appropriate placement for J.G., *id*. at 7; (3) "by failing to find that [DCPS] denied J.G. [a] FAPE by failing to timely convene the November 19, 2003 MDT/IEP/Placement meeting," *id*. at 8; (4) by failing to find that DCPS denied J.G. a FAPE by failing to have appropriate personnel at the November 19, 2003" MDT/IEP meeting, *id*. at 9; and (5) by "failing to find that at the November 19, 2003 IEP meeting, [DCPS] agreed to place J.G. at Carroll High School and provide the services contained on his interim IEP at Carroll," *id*. at 11.

Before investigating the merit of Plaintiff's "factual mistake" assertions, it is important to focus on what Hearing Officer Banks actually concluded in his February 17, 2005 H.O.D.  In his decision, Hearing Officer Banks concluded that DCPS had denied J.G. a FAPE "by failing to develop an IEP and to make a placement for the 2004-2005 school year."  Compl., Ex. 1 (2/17/05 H.O.D.) at 5.  The Hearing Officer further concluded that DCPS failed to "prove that its proposed placement did or could provide educational benefit to" J.G.  *Id.*  Hearing Officer Banks pointed out that J.G.'s special education teacher at Coolidge "admitted that she has never provided the full amount of services prescribed in" J.G.'s November 19, 2003 IEP; indeed, despite the fact that J.G. was having difficulty in Math and Spanish, he was provided no specialized instruction during the

Spring 2005 semester, and – due to administrative negligence – actually received no grades for the

Fall 2004 semester.  *Id.*  Given these failings, Hearing Officer Banks found that the "public school

system has defaulted on its obligations under the Act," and deemed Plaintiff "the prevailing party in

this proceeding."  *Id.* at 5-6.  While the Hearing Officer noted certain potential problems with HRA,

he did conclude that "[a]s between Coolidge [DCPS' proposed placement] and HRA . . . [J.G.'s]

interests would be better served by an interim placement at HRA" – the placement requested by

Plaintiff.  *Id.* at 6.  Accordingly, the Hearing Officer ordered that DCPS place and fund J.G. at HRA

for the completion of the 2004-2005 school year, where he remains.  *Id.*

        Given the parameters of the Hearing Officer's February 17, 2005 decision, which was

largely favorable to Plaintiff, it is clear that even assuming *arguendo* that Hearing Officer Banks

erred in not finding more violations of FAPE by DCPS, Plaintiff has suffered no harm as a result of

this "failure."  Importantly, the H.O.D. was not the last action taken with respect to relief provided

to J.G.; rather, as Plaintiff admits, an MDT/IEP meeting was convened for J.G. on May 17, 2005,

during which "the team determined that the student was in need of a full-time special education

program and an IEP reflecting this determination was developed."  Pl.'s Stmt. ¶ 32.  Moreover, at

this meeting, DCPS offered compensatory education in the form of 1:1 tutoring and counseling for

J.G.  Def.'s Stmt. ¶ 6.  Plaintiff and her counsel agreed to the amount and type of compensatory

education offered.  *Id.*

        Given these facts, it is clear that the student has a current IEP that has been accepted by his

parent in a placement requested by his parent.  Accordingly, it is irrelevant whether there were

sufficient personnel present at the November 19, 2003 MDT/IEP meeting, whether the 2003

MDT/IEP meeting was convened in a timely manner, or whether DCPS' finding that J.G. was

disabled was based only on one category ("traumatic head injury") and not the other ("ADHD").

Rather, what is critical is the fact that the Hearing Officer found that DCPS had denied J.G. a FAPE. Whether the Hearing Officer based such a finding on one, or two, or three alleged violations is irrelevant – the result would be the same.

Plaintiff seeks to escape this inevitable conclusion by stressing that "[g]uidance from this honorable Court on the need for the hearing officer to address each and every issue raised by the parent will hopefully decrease the need for parents to seek court intervention in the future." Pl.'s Opp'n & Reply at 2. However, pursuant to Article III, section 2 of the Constitution, federal courts are limited to deciding "actual, ongoing controversies." *21st Century Telesis Joint Venture v. Fed. Commc'ns Comm'n*, 318 F.3d 192, 198 (D.C. Cir. 2003) (citing *Honig v. Doe*, 484 U.S. 305, 317, 108 S.Ct. 592, 98 L.Ed.2d 696 (1988)). Article III's case-or-controversy requirement prohibits courts from issuing advisory opinions or decisions based on hypothetical facts or abstract issues. *Flast v. Cohen*, 392 U.S. 83, 96, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The Supreme Court has made it clear that "no justiciable controversy is presented . . . when the parties are asking for an advisory opinion, [or] when the question sought to be adjudicated has been mooted by subsequent developments." *Id.* at 95, 88 S.Ct. 1942. Indeed, where the challenged conduct ceases or is alleviated, and "there is no reasonable expectation that the wrong will be repeated, . . . it becomes impossible for the court to grant any effectual relief whatever to prevailing party, and any opinion as to the legality of the challenged action would be advisory." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). This often happens where there is "[c]orrective action by an agency," which is "one type of subsequent development that can moot a previously justiciable issue." *Nat'l Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 680 F.2d 810, 814 (D.C. Cir. 1982) (citing *Comm'r v. Shapiro*, 424 U.S. 614, 622-23 n.7, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976)).

Here, it is clear that the five "factual mistakes" identified by Plaintiff are moot, given that "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *City of Erie*, 529 U.S. at 287, 120 S.Ct. 1382 (internal quotations omitted).  Of the central relief requested by Plaintiff, Hearing Officer Banks' February 17, 2005 H.O.D. provided a substantial portion of that request by finding that a violation of the IDEA had occurred, ordering a subsequent MDT/IEP meeting, and placing J.G. at HRA.  The subsequent MDT/IEP meeting on May 17, 2005 rectified any central relief that remained outstanding, as the DCPS and Plaintiff were able to agree upon an IEP upon a finding that J.G. required a "full-time special education program." The only remaining "relief" requested by Plaintiff with respect to these five "factual mistake" allegations is her application that the Court "[f]ind that Hearing Officer Banks erred as set forth above."  Pl.'s Mot. for Summ. J. at 13.  This request, coupled with her demand for greater "guidance," is emblematic of a classic request for an advisory opinion:  with the requested placement having been provided and an IEP having been agreed upon, Plaintiff now asks that this Court pontificate on the appropriateness of DCPS' actions during the November 19, 2003 MDT/IEP meeting, despite the fact a ruling by the Court would have no practical effect.  This is a step that the Court is unwilling to take.  Rather, because it is "impossible for the [C]ourt to grant any effectual relief whatever to the prevailing party," *City of Erie*, 529 U.S. at 287, 120 S.Ct. 1382, the Court finds that Plaintiff's claims relating to the five "factual errors" in Hearing Officer Bank's decision are denied as irrelevant and moot at this time.  *See Kutsushi v. Dist. of Columbia*, Civ. No. 04-2016(JGP), 2006 WL 785293, at *3 (D.D.C. Mar. 27, 2006) (denying a similar claim brought by the same counsel in this case because the plaintiff received the basic thrust of the relief requested in the complaint and neither party challenged the appropriateness of that relief).

B.      *Plaintiff's IDEA Claim Is Moot*

Plaintiff also makes one claim that can be characterized as an "IDEA claim." This IDEA

claim is the fifth claim listed in Plaintiff's demands; specifically, Plaintiff contends that Hearing

Officer Banks erred by placing J.G. at HRA on an "interim" basis rather than affording him a

permanent placement there. *See* Pl.'s Mot. for Summ. J. at 10. As noted previously, at the February

9, 2005 due process hearing, Plaintiff sought to have J.G. placed at HRA. Hearing Officer Banks

granted this request in his February 17, H.O.D., which directed that J.G. "is hereby placed at High

Road Academy on an interim basis until the completion of the 2004-2005 school year" – the school

year that was the subject of the hearing. *See* Compl., Ex. 1 (2/17/05 H.O.D.) at 6. To the extent

that Plaintiff contends that the Hearing Officer erred because he placed J.G. at HRA "on an *interim*

basis instead of issuing a final decision," Pl.'s Mot. for Summ. J. at 10, Plaintiff is without support;

rather, a reading of the H.O.D. makes it plain that Hearing Officer Banks' decision was final: this

was not an "interim" decision, and J.G. was certainly to be placed at HRA through the completion of

the 2004-2005 school year. Compl., Ex. 1 (2/17/05 H.O.D.) at 6. The Hearing Officer further

ordered that, prior to the completion of the school year, a new MDT/IEP meeting was to be held in

order to review J.G.'s progress and update his IEP. *Id.*

To the extent that Plaintiff's IDEA claim can be read to encompass a request that J.G.

continue in his private placement at HRA for the duration of his school years, it is clear that the

IDEA does not require such a placement. Importantly, a FAPE "means special education and

related services that have been provided at public expense, under public supervision and direction,

and without charge; meet the standards of the [local] education agency; include an *appropriate*

preschool [through] secondary school education; and are provided in conformity with the individual

education program." 20 U.S.C. § 1401(9) (emphasis added). While HRA might be an appropriate

18

placement for J.G. at the current time, another school – including a D.C. public school – might be an appropriate placement at a later date depending on J.G.'s progress.  Indeed, the purpose of a student's annual MDT/IEP meeting is to track his or her progress and determine what educational and other services are needed at that time to ensure that the student receives educational benefits. J.G.'s May 17, 2005 MDT/IEP meeting determined that he required a "full-time special education program," and created an IEP with which Plaintiff agreed.  At present, J.G. enjoys both a placement and IEP that Plaintiff supports; should that decision not be agreeable to Plaintiff in the future, she will then have the opportunity to exercise her due process rights under the IDEA.  However, given the fact that the Hearing Officer placed J.G. at the school requested by Plaintiff, J.G. remains at that school, and DCPS conducted an MDT/IEP meeting that achieved a mutually-agreeable result, Plaintiff's IDEA claim must be dismissed as moot.  Should DCPS attempt to move J.G. to another school, Plaintiff – after exercising her administrative remedies – can file another action around that event.  However, given that no such move has been attempted, and J.G. remains in a mutually agreeable private placement, Plaintiff's efforts to go beyond the requirements of the IDEA are simply moot at this time.  *See City of Erie*, 529 U.S. at 287, 120 S.Ct. 1382; *see also Kutsushi*, 2006 WL 785293, at *3 ("The Court cannot foresee what would prevent plaintiff from receiving an appropriate change of placement through the administrative process if it became necessary.  The Court cannot anticipate what facts might arise in the future.").

C.      *Plaintiff's Claim for Compensatory Education is Moot*

Plaintiff's final claim in this action is the seventh claim listed in her Motion for Summary Judgment, i.e., her claim that Hearing Officer Banks' February 17, 2005 H.O.D. was erroneous because he failed to order DCPS to provide compensatory education services for its post-2003 delay. *See* Pl.'s Mot. for Summ. J. at 11.  As relief for this alleged error, Plaintiff seeks "that the type and

19

delivery of these services [compensatory education] be determined by Petitioner's MDT team at his current educational placement, including his parent." *Id.* at 12-13.  As noted previously, an MDT/IEP meeting was convened at HRA on May 17, 2005, which included Plaintiff, Plaintiff's counsel, a social worker, a teacher at HRA, the Director of HRA, and a DCPS liaison representative.  *See* Def.'s Opp'n & Cross-Mot., Ex. 1 (May 17, 2005 IEP Notes) at 1.  At that meeting, DCPS offered compensatory education in the form of 1:1 tutoring and counseling; Plaintiff's counsel weighed this offer and agreed that these "comp ed hours seem appropriate." *Id.* at 5-6.  Accordingly, given that an MDT/IEP meeting was convened and "the type and delivery of [compensatory education was] determined by Petitioner's MDT team," Plaintiff's request for compensatory education is moot, as J.G. has received the requested relief.

## V: CONCLUSION

For the reasons set forth above, Plaintiff's claims are moot.  As such, the Court shall grant Defendant's Cross-Motion for Summary Judgment and shall deny Plaintiff's Motion for Summary Judgment.  An appropriate Order accompanies this Memorandum Opinion.

Date:   May 2, 2006

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge